UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOSHUA P. BRAITHWAITE,

        Plaintiff,

v.                                           Case No. 17-cv-706-pp

MITCHELL BILLE, GERRAD KIBBEL,
RYAN HINTZ, CO KEVIN BENSON,
and ADAM MARTIN,

        Defendants.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 28), GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES (DKT. NO. 32), AND DISMISSING CASE WITHOUT PREJUDICE**

---

       Plaintiff Joshua Braithwaite is a Wisconsin state prisoner representing himself. He filed this lawsuit, alleging that the defendants failed to prevent him from harming himself, in violation of the Eighth Amendment to the United States Constitution. Dkt. No. 1. The parties have filed cross-motions for summary judgment. Dkt. Nos. 28, 32. The court will deny the plaintiff's motion for summary judgment, grant the defendants' motion for summary judgment and dismiss the case without prejudice, because the plaintiff failed to exhaust his administrative remedies.

1

## I. MOTIONS FOR SUMMARY JUDGMENT (Dkt. Nos. 28, 32)

A. Facts[1]

On April 18, 2016, the plaintiff was an inmate housed at the Waupun Correctional Institution (Waupun), in the B-range cellblock of the restrictive housing unit, cell B-106. Dkt. No. 47 at ¶1. The defendants were employed at Waupun: Ryan Hintz was a correctional sergeant, and Mitchell Bille, Kevin Benson, Gerrad Kibbel and Adam Martin were correctional officers working the restrictive housing unit. Id. at ¶2.

### 1. *The April 18 Incident*

The parties dispute some of the events that form the basis of the plaintiff's claim. They first dispute whether, on the morning of April 18, 2016, the plaintiff asked Officers Kibbel and Bille for help because he was feeling suicidal. According to the plaintiff, on that morning he told Officer Kibbel that he was going to harm himself and that he needed to see Psychological Services Unit (PSU) staff as soon as possible. Dkt. No. 35 at ¶1. Kibbel allegedly responded that he would be right back. Id. The plaintiff avers that about an hour later, he told Officer Bille that he was having a mental breakdown, was going to cut his wrist and needed to see PSU for help. Id. at ¶2. The plaintiff also alleges that when Officers Bille and Kibbel delivered his lunch tray, he asked them why they had not "got anyone to see me regarding my request to

---

[1] This section is taken from the defendants' response to plaintiff's proposed findings of fact, dkt. no. 35, and the defendants' reply to plaintiff's response to defendants' proposed findings of fact, dkt. no. 47.

2

see PSU because I was feeling suicidal and they both just kept walking." Id. at ¶3.

The defendants do not agree with these proposed facts. According to the defendants, Officer Kibbel does not recall the plaintiff asking to see PSU staff and/or making statements of being suicidal to him that day. Id. at ¶1. Likewise, Officer Bille does not recall the plaintiff asking to see PSU staff and/or making statements that he wanted to harm himself. Id. at ¶2. The defendants also dispute the plaintiff's assertion that he asked Bille and Kibbel why they had not gotten help for him when they delivered his lunch tray. Id.

The parties do not dispute that the plaintiff used the intercom system in his cell to contact the control center and ask for help. Id. at ¶4. Between 10:51 a.m. and 11:10 a.m., Officer Martin received three calls on the intercom regarding the plaintiff. Dkt. No. 47 at ¶15. In the first call, the plaintiff said he was suicidal. Id. at ¶16. Officer Martin notified Sergeant Hintz of the plaintiff's statements.[2] Id. In the second call, an inmate housed near the plaintiff reported that "B106 is suicidal." Id. at ¶17. The plaintiff was in cell B106. Id. Officer Martin notified Sergeant Hintz about the call. Id. at ¶18. In the third call, the plaintiff stated that he was cutting himself. Id. at ¶19. Officer Martin notified Sergeant Hintz of the plaintiff's statement. Id.

---

[2] In his response to the defendants' proposed findings, the plaintiff does not dispute that Officer Martin answered all three calls. Dkt. No. 47 ¶15. But in his own proposed findings of fact, the plaintiff asserts that Officer Benson received one of the calls. Dkt. No. 35 at ¶¶4,5. The defendants dispute that Benson received any calls from the plaintiff. Id. According to the defendants, Officer Benson was not in the control center at the time; he allegedly left at 10:35 a.m. to help in another part of the institution. Dkt. No. 47 at ¶6.

3

About ten minutes after the third call, Sergeant Hintz and Officer Bille arrived at the plaintiff's cell door. Dkt No. 35 at ¶8. The plaintiff states that when they arrived, he was cutting his arm with a sharpened pen insert, but the defendants dispute that he was cutting himself, or that there was any serious injury, when they arrived. Id. Officer Bille stated, "man I thought you where [sic] playing." Id. ¶9. They removed the plaintiff from his cell. Id.

Sergeant Hintz had the plaintiff placed in the strip search cell, and Dr. Van Buren, a psychologist at Waupun, saw him. Dkt. No. 47 at ¶26. Dr. Van Buren placed the plaintiff on observation status. Id. at ¶27.

Later that same day, Nurse Gunderson saw the plaintiff in the strip search cell for his claim that he cut himself. Id. at ¶28. Nurse Gunderson noted that the plaintiff had a superficial abrasion on his left arm measuring about 1 centimeter x 0.2 centimeter. Id. at ¶29. The plaintiff "disagrees" with the size of the measurement, and states that he thinks it was bigger than that. Id. According to the plaintiff's medical records, there was no active bleeding or signs/symptoms of infection. Id. at ¶30. The abrasion was cleaned and covered with a bandage so the skin was protected from possible infection. Id. The nurse noted in the medical records that no follow-up appointment was needed and that the plaintiff could remove the bandage in two days. Id. at ¶31.

2. *The Plaintiff's Offender Complaint*

On April 25, 2016, the plaintiff submitted offender complaint WCI-2016-10078, alleging that on April 18, security staff failed to protect him after he made threats of self-harm if he was not removed from his cell. Id. at ¶32. The

4

plaintiff claimed he then cut his wrist with a pen. Id. Institution Complaint Examiner Nelson returned this complaint to the plaintiff the same day, directing him to attempt to resolve the issue by contacting Lieutenant Tritt in the security department. Id. at ¶33. Nelson informed the plaintiff that this was a "return," not a rejection, and that he could re-submit his complaint after he took the following actions: 1) inform Tritt that he was instructed to contact Tritt by the Inmate Complaint Department regarding the issues presented in the complaint; 2) re-submit the complaint if he felt staff did not address his issue to his satisfaction, including any correspondence to and/or from Tritt with the resubmission; and 3) inform the Complaint Department he is resubmitting the complaint for review using the original complaint form. Id. at ¶34.

The plaintiff re-submitted offender complaint WCI-2016-10078 on May 17, alleging that he had "waited a way over a reasonable amount of time and I have not heard back from the parties you request for me to contact." Id. at ¶35. The plaintiff did not include any documentation/correspondence with his resubmission showing who he tried to contact, nor did he provide any information about when or how he tried to contact Tritt to attempt to resolve his complaint, as he was directed to do by the complaint examiner. Id. at ¶36. The plaintiff "disputes" this fact, stating that he wrote to Tritt and received no response. Id.

Institution Complaint Examiner Joanne Bovee reviewed the plaintiff's re-submitted complaint and noted that he was directed to contact Tritt to attempt to resolve the issue in accordance to Wis. Admin. Code §DOC 310.09(4). Id. at

5

¶37. Bovee contacted Tritt, and Tritt informed her that he had not received anything from the plaintiff about the issues in his complaint. Id. at ¶38. Given this, Bovee found that the plaintiff had failed to follow the directions of Institution Complaint Examiner Nelson to contact Tritt. Id. at ¶39.

A directive from the institution complaint examiner to contact the appropriate area supervisory staff is an element of the inmate complaint review process, geared toward resolving issues in the most productive and expedient manner, and it is one that the plaintiff opted not to follow. Id. at ¶40. While the complaint examiner must accept complaints in which the complainant refuses to follow the examiner's directives, the examiner is not obligated to investigate matters in which an inmate refuses to cooperate. Id. at ¶41. When an inmate chooses to utilize the inmate complaint review system to resolve grievances, he also bears the responsibility of cooperating with the examiner. Id. at ¶42.

On June 2, based on the plaintiff's failure to cooperate with the process, Bovee recommended that the complaint be dismissed. Id. at ¶43. Had the plaintiff followed the directives to attempt to resolve his issue by contacting Sergeant Tritt, Bovee would have reviewed the plaintiff's complaint on the merits. Id. at ¶44. Because he failed to follow those directives, Bovee did not review or make a recommendation on the merits of the plaintiff's. Id. at ¶45. The reviewing authority, Warden Brian Foster, accepted Bovee's recommendation and dismissed WCI-2016-10078 at the institution level. Id. at ¶46.

The plaintiff appealed this decision to the corrections complaint examiner's office. Id. at ¶47. On August 18, Corrections Complaint Examiner Welcome Rose recommended dismissing the appeal, and noted that an inmate is expected to follow the instructions of the institution complaint examiner when using the complaint system. Id. at ¶48. On appeal, the plaintiff claimed to have written to Tritt as directed, but refused to submit evidence of that correspondence on appeal stating, " . . . I would not be sending because I will be using that in my lawsuit when this over with . . . ." Id. at ¶49. Rose further noted that given the plaintiff's refusal to submit evidence that could be relevant to his claim that the institution improperly dismissed his complaint, she could not proceed with the investigation into his claims further. Id. at ¶50. Based on her finding that the plaintiff failed to cooperate with the institution complaint examiner and refused to submit supporting evidence on appeal, Rose recommended that the appeal be dismissed. Id. at ¶51. The Office of the Secretary agreed and accepted the recommendation as the final decision of the Secretary. Id. at ¶52.

B. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that

7

"might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

C. Discussion

1. *The Parties' Arguments*

The plaintiff contends that he is entitled to summary judgment on his deliberate indifference claim that the defendants refused to take him to observation after he notified them that he wanted to harm himself. Dkt. No. 29 at 2. The defendants first respond that the plaintiff failed to exhaust his administrative remedies because he refused to cooperate with the process, which resulted in his inmate complaint not being addressed on the merits. Dkt. No. 33 at 11. The defendants also contend that the plaintiff's claim should be

dismissed on the merits, because they did not recklessly fail to protect the plaintiff from an objectively serious risk of harm to his future health or safety. Id. at 16. Finally, the defendants argue that they are entitled to qualified immunity. Id. at 24.

2. *The Exhaustion Requirement*

According to the Prison Litigation Reform Act (PLRA) (which applies in this case because the plaintiff was incarcerated when he filed his complaint), "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Various important policy goals give rise to the rule requiring administrative exhaustion, including restricting frivolous claims, giving prison officials the opportunity to address situations internally, giving the parties the opportunity to develop the factual record and reducing the scope of litigation. Smith v. Zachary, 255 F.3d 446, 450–51 (7th Cir. 2001).

The PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. Woodford v. Ngo, 548 U.S. 81, 88, 93 (2006); see also Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require").

9

The Department of Corrections' (DOC) Inmate Complaint Review System provides the administrative process for inmates with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code §DOC 310.01(2)(a) (2014).[3] Before an inmate can file a lawsuit, he must exhaust all administrative remedies that the DOC has promulgated by rule. Wis. Admin. Code §DOC 310.05. Inmates should use the Inmate Complaint Review System to "raise significant issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights complaints." Wis. Admin. Code §DOC 310.08(1).

To use the Inmate Complaint Review System, an inmate must file a complaint with the institution complaint examiner within fourteen days after the occurrence that gives rise to the complaint. Wis. Admin. Code §§DOC 310.07(1) & 310.09(6). Prior to accepting the complaint, the institution complaint examiner may direct the inmate to attempt to resolve the issue. Wis. Admin. Code §DOC 310.09(4).

After reviewing and acknowledging each complaint in writing, the institution complaint examiner either rejects the complaint or sends a recommendation to the "appropriate reviewing authority." Wis. Admin. Code §§DOC 310.11(2) & 310.11(11). The appropriate reviewing authority makes a decision within ten days following receipt of the recommendation. Wis. Admin. Code §DOC 310.12. Within ten days after the date of the decision, a complainant dissatisfied with a reviewing authority decision may appeal that

---

[3] The court cites to the December 2014 version of Chapter DOC 310 of the Wisconsin Administrative Code throughout this order.

decision by filing a written request for review with the corrections complaint examiner. Wis. Admin. Code §DOC 310.13(1). The corrections complaint examiner reviews the appeal and makes a recommendation to the Secretary of the DOC. Wis. Admin. Code §DOC 310.13(6). The Secretary may accept, adopt or reject the corrections complaint examiner's recommendation, or return the appeal to the corrections complaint examiner for further investigation. Wis. Admin. Code §DOC 310.14(2).

    3.  *The Court's Analysis: The Plaintiff did not Exhaust his Administrative Remedies*

  The plaintiff filed an inmate complaint in which he raised the issue of the defendants' alleged failure to help him after he notified them that he was suicidal. The institution complaint examiner returned the inmate complaint to the plaintiff, and directed him to try to resolve the issue with Sergeant Tritt, per Wis. Admin. Code §DOC 310.09(4). The institution complaint examiner also explained that the plaintiff could resubmit his complaint if he felt that staff did not address the issue to his satisfaction *with any correspondence to and/or from Tritt with the resubmission.* The plaintiff resubmitted his inmate complaint, but he did not include any correspondence to and/or from Sergeant Tritt, as directed. In his appeal to the corrections complaint examiner, the plaintiff asserted that he wrote to Tritt, but that he did not receive a response; he stated that he would not submit evidence of the correspondence. The institution complaint examiner and the warden dismissed the plaintiff's complaint at the institution level for failure to follow directions, and did not

11

address the complaint on the merits. The corrections complaint examiner and the Office of the Secretary agreed with the decision on appeal.

"[U]nless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." Pozo, 286 F.3d at 1023. To properly exhaust, the plaintiff should have included a copy of his correspondence to Tritt, as directed. The plaintiff acknowledges that he did not follow the directions, and he does not describe any reason that he could not have done so. The plaintiff's failure to follow the rules means that he did not properly exhaust his administrative remedies. See Woodford, 548 U.S. at 93; see also Carlton v. Dodge Corr. Inst., No. 12–cv–695–wmc, 2014 WL 4186796, at *5 (W.D. Wis. Aug. 21, 2014) (no exhaustion where inmate "never submitted evidence of an attempt to comply with ICE's directives [to attempt informal resolution], as he had been repeatedly instructed to do pursuant to the DOC's grievance procedure, before simply submitting new complaints") (emphasis omitted). The court will dismiss the plaintiff's deliberate indifference claim without prejudice, for failure to exhaust administrative remedies. See Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004).

## II. CONCLUSION

The court **DENIES** the plaintiff's motion for summary judgment. Dkt. No. 28.

The court **GRANTS** the defendants' motion for summary judgment for failure to exhaust administrative remedies. Dkt. No. 32.

The court **ORDERS** that this case is **DISMISSED WITHOUT PREJUDICE**.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 16th day of July, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**