UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSHUA P. BRAITHWAITE,

                Plaintiff,

v.                                            Case No. 17-cv-706-pp

MITCHELL BILLE, GERRAD KIBBEL,
RYAN HINTZ, CO KEVIN BENSON,
and ADAM MARTIN,

                Defendants.

**ORDER DENYING PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT (DKT. NO. 55), GRANTING IN PART DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT (DKT. NO. 56), DISMISSING DEFENDANTS BENSON AND MARTIN AND DENYING PLAINTIFF'S MOTION FOR SANCTIONS (DKT. NO. 60)**

      Plaintiff Joshua Braithwaite is a Wisconsin state prisoner representing himself. In this lawsuit he alleges that the defendants failed to prevent him from harming himself, in violation of the Eighth Amendment to the United States Constitution. Dkt. No. 1. This order addresses the parties' renewed motions for summary judgment, dkt. nos. 55, 56, and the plaintiff's motion for sanctions, dkt. no. 60.

**I.    Procedural Background**

      On July 16, 2018, the court granted the defendants' motion for summary judgment for failure to exhaust administrative remedies and dismissed the case without prejudice. Dkt. No. 49. The court subsequently granted the plaintiff's motion to alter or amend judgment, determined that the plaintiff had exhausted his available administrative remedies and reopened the case for

1

consideration of the merits of the parties' summary judgment motions. Dkt. No. 54.

The parties had filed cross-motions for summary judgment on the merits of the plaintiff's claims. Dkt. Nos. 28, 32. The court did not address the motions because it granted the defendants' summary judgment motion on exhaustion grounds. In the order granting the plaintiff's motion to alter or amend judgment and reopening this case, the court told the parties that they did not need to refile all the summary judgment materials that they previously had filed; they could file a "renewed motion for summary judgment" that referenced their prior materials. Dkt. No. 54 at 6. The parties' renewed motions reference the summary judgment materials that they previously filed.

## II.    Renewed Motions For Summary Judgment (Dkt. Nos. 55, 56)

A.    Facts[1]

On April 18, 2016, the plaintiff was an inmate at Waupun Correctional Institution, housed in the B-range cellblock of the restrictive housing unit, cell B-106. Dkt. No. 47 at ¶1. The defendants were employed at Waupun: Ryan Hintz was a correctional sergeant, and Mitchell Bille, Kevin Benson, Gerrad Kibbel and Adam Martin were correctional officers working in the restrictive housing unit. Id. at ¶2.

The parties dispute some of the events that form the basis of the plaintiff's claim. They first dispute whether, on the morning of April 18, 2016,

---

[1] This section is taken from the defendants' response to plaintiff's proposed findings of fact, dkt. no. 35, and the defendants' reply to plaintiff's response to the defendants' proposed findings of fact, dkt. no. 47.

the plaintiff asked Officers Kibbel and Bille for help because he was feeling suicidal. According to the plaintiff, on that morning he told Kibbel that he was going to harm himself and that he needed to see Psychological Services Unit (PSU) staff as soon as possible. Dkt. No. 35 at ¶1. Kibbel allegedly responded that he would be right back. Id. The plaintiff avers that about an hour later, he told Bille that he was having a mental breakdown, was going to cut his wrist and needed to see PSU for help. Id. at ¶2. The plaintiff also alleges that when Bille and Kibbel delivered his lunch tray, he asked them why they had not "got anyone to see me regarding my request to see PSU because I was feeling suicidal and they both just kept walking." Id. at ¶3.

The defendants do not agree with these proposed facts. According to the defendants, Kibbel does not recall the plaintiff asking to see PSU staff or making statements of being suicidal to him that day. Id. at ¶1. Bille does not recall the plaintiff requesting to see PSU staff or making statements that he wanted to harm himself. Id. at ¶2. The defendants also dispute the plaintiff's assertion that he asked Bille and Kibbel why they had not gotten help for him when they delivered his lunch tray. Id.

The parties do not dispute that the plaintiff used the intercom system in his cell to contact the control center and ask for help. Id. at ¶4. Between 10:51 a.m. and 11:10 a.m., Officer Martin received three calls on the intercom regarding the plaintiff. Dkt. No. 47 at ¶15. In the first call, the plaintiff said he was suicidal. Id. at ¶16. Martin notified Sergeant Hintz of the plaintiff's

3

statements.[2] Id. In the second call, an inmate housed near the plaintiff reported that "B106 is suicidal." Id. at ¶17. The plaintiff was in cell B106. Id. Martin notified Hintz about the call. Id. at ¶18. In the third call, the plaintiff stated that he was cutting himself. Id. at ¶19. Martin notified Hintz of the plaintiff's statement. Id.

At the time of the three calls, Martin was the only officer in the control center. Id. at ¶¶20-21. Thus, Martin was unable to leave the control center to physically check on the plaintiff. Id. at 22.

About ten minutes after the third call, Hintz and Bille arrived at the plaintiff's cell door. Dkt No. 35 at ¶8. The plaintiff states that when they arrived, he was cutting his arm with a sharpened pen insert; the defendants dispute that he was cutting himself, or that there was any serious injury, when they arrived. Id. Bille stated, "man I thought you where [sic] playing." Id. at ¶9. They removed the plaintiff from his cell. Id.

Hintz had the plaintiff placed in the strip search cell and Dr. Van Buren, a psychologist at Waupun, saw him. Dkt. No. 47 at ¶26. Van Buren placed the plaintiff on observation status. Id. at ¶27.

Later that same day, Nurse Gunderson saw the plaintiff in the strip search cell for his claim that he cut himself. Id. at ¶28. Gunderson noted that

---

[2] In his response to the defendants' proposed findings of fact, the plaintiff does not dispute that Martin answered all three calls. Dkt. No. 47 at ¶15. But in his own proposed findings of fact, the plaintiff asserts that Officer Benson received one of the calls. Dkt. No. 35 at ¶¶4, 5. The defendants dispute that Benson received any calls from the plaintiff. Id. According to the defendants, Benson was not in the control center at the time; he allegedly left at 10:35 a.m. to help in another part of the institution. Dkt. No. 47 at ¶6.

the plaintiff had a superficial abrasion on his left arm measuring about 1 centimeter x 0.2 centimeter. Id. at ¶29. The plaintiff "disagrees" with the size of the measurement and states that he thinks it was bigger than that. Id. According to the plaintiff's medical records, there was no active bleeding or signs/symptoms of infection. Id. at ¶30. The abrasion was cleaned and covered with a bandage so the skin was protected from possible infection. Id. The nurse noted in the medical records that no follow up appointment was needed and that the plaintiff could remove the bandage in two days. Id. at ¶31.

### B. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

5

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

    C.    Discussion

        1.    *Applicable Law*

The Eighth Amendment's prohibition against cruel and unusual punishment "protects prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain.'" Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' . . . proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation omitted). "To establish an entitlement to damages [for deliberate indifference to a serious medical need], the prisoner must provide evidence that he presented an objectively serious medical need that a defendant correctional officer responded to with deliberate indifference, thereby resulting in some injury." Lord v. Beahm, 952 F.3d 902, 904 (7th Cir. 2020) (citation omitted). The plaintiff must show that "he suffered from an objectively serious medical condition" and that "a state official responded with deliberate indifference to the condition." Knight v. Grossman, 942 F.3d 336, 340 (7th Cir. 2019).

Suicide is an objectively serious medical condition, and a prison official cannot intentionally disregard a known risk that an inmate is suicidal. Lord, 952 F.3d at 904.

> At the second step, "[w]here the harm at issue is a suicide or attempted suicide, the second, subjective component of an Eighth Amendment claim requires a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk." *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006). This requires "more than mere or gross negligence, but less than purposeful infliction of harm." *Matos v. O'Sullivan*, 335 F.3d 553, 557 (7th Cir. 2003)).

Lisle v. Welborn, 933 F.3d 705, 716-17 (7th Cir. 2019).

   2.  *The Court's Analysis*

The plaintiff contends that he is entitled to summary judgment on his claim that the defendants refused to take him to observation after he notified them that he wanted to harm himself. Dkt. No. 29 at 2. The defendants contend that the court should dismiss the plaintiff's claim because they did not recklessly fail to protect him from an objectively serious risk of harm to his future health or safety. Dkt. No. 33 at 16. They also contend that they are entitled to qualified immunity. Id. at 24.

      a.  Objective Prong: Serious Medical Need

The defendants argue that the "tiny scratch on [the plaintiff's] arm was not an objectively serious risk of harm to [the plaintiff]". Dkt. No. 33 at 16. According to the defendants, the plaintiff does not suggest he actually faced any risk of serious injury before he was removed from his cell on April 18 and they assert that a "tiny superficial abrasion is not an objectively serious harm that triggers the constitutional duty to take reasonable measures to protect an

inmate from it." Id. at 18. They cite two unpublished Wisconsin district court cases in which the court concluded that without evidence of an objectively serious injury, an officer's failure to intervene and stop an inmate from ingesting a handful of pills is not enough to create a substantial risk of serious harm protected by the Constitution. Id.

In Davis v. Ghee, No. 14-cv-617-WMC, 2017 WL 2880869 (W.D. Wis. July 6, 2017), the plaintiff showed a prison guard a handful of pills, reported feeling suicidal and asked to be placed on observation. Id. at *1. The defendant responded with sarcasm and left without taking the pills away from the plaintiff or trying to help him. The plaintiff swallowed the pills and was taken to the hospital. Id. The defendant moved for summary judgment on the subjective prong of the deliberate indifference test, arguing that the plaintiff had not shown him any pills or told him that the plaintiff was suicidal. Id. The court denied the motion for summary judgment because of the parties' disputes regarding those facts but scheduled a hearing on the objective prong of the test, given that the plaintiff's own evidence indicated that he'd ingested only a small amount of Tylenol that didn't pose a risk of harm. Id. at *1-2. After the hearing, the court granted summary judgment in favor of the defendant, concluding that because the medical records showed that the plaintiff had a "non-toxic amount of Tylenol in his system" that caused "no pain, no significant symptoms" and required "no treatment," there was "no evidence that plaintiff suffered any objective risk of serious harm protected by the U.S. Constitution." Id. at *6.

The facts in Davis resemble the facts here—a plaintiff who allegedly told prison staff that he was suicidal, but whose post-incident injury was relatively minor. This court, however, is less comfortable than the Davis court in assuming that if the post-incident injury was minor, there must have been no pre-incident risk. Rather, the question at this point in the analysis is whether the plaintiff was at risk of serious harm, not whether he ultimately suffered a serious injury. See Daniels v. Klemmer, 404 F. Supp. 3d 1223, 1230 (E.D. Wis. 2019) ("The question is whether, at the time the plaintiff made the threat and the defendants responded to it, the plaintiff was at risk of inflicting objectively serious harm on himself," not whether he actually inflicted objectively serious harm); Braithwaite v. Smelcer, No. 18-CV-1507, 2019 WL 3937015, at *3 (E.D. Wis. Aug. 19, 2019) (holding that a reasonable jury could conclude that plaintiff's self-harm threats were genuine at the time he made them, even though he ended up inflicting only minor injuries).

In Lindsey v. Runice, No. 16-C-75-WCG (E.D. Wis. April 10, 2017), Judge Griesbach granted summary judgment because he found that the plaintiff "chewed and swallowed the pills as soon as [the defendant] arrived," which meant that "no member of the prison staff ever had a chance to 'protect' him from taking the pills." Id. at 5-6. While Judge Griesbach also found that there was no evidence that the plaintiff had harmed himself, he framed his decision this way:

> [I]t appears that taking seven 1.5 mg Risperidone pills was not a threat to the Plaintiff's life, and neither did it cause any appreciable distress. The evidence shows that after the Plaintiff was subdued, he saw a nurse and the prison doctor, and then was taken to the

9

> hospital, apparently as a precautionary measure. He was
> administered charcoal, and his blood work was normal. In short,
> there is no evidence he suffered any pain or damage from ingesting
> the pills. The unstated premise of this entire action is that guards
> have some kind of duty to prevent inmates from taking pills. That is
> entirely too specific. Instead, guards have a duty—assuming they
> appreciate the risk—to prevent inmates from causing serious harm
> to themselves. Pills are not inherently harmful simply because they
> are pills. The mere fact that someone ingests seven pills—which
> could include aspirin, ibuprofen, iron, vitamin C, antacids, or any
> number of other kinds of pills—does not, in and of itself, create an
> injury of constitutional proportions. This means two things. First,
> the condition [the plaintiff] created by taking the pills was not an
> objectively serious medical condition. Second, none of the officers
> could have known that taking a given number of unidentified (at the
> time) pills would have caused serious harm. Farmer v. Brennan, 511
> U.S. 825, 834 (1994) (the plaintiff must show that his condition was
> objectively serious, and that state officials acted with the "requisite
> culpable state of mind, deliberate indifference," which is a subjective
> standard.) Absent any evidence of a serious risk of harm, there is no
> injury under the Eighth Amendment.

Id. at 6-7.

This case differs from Lindsey. The plaintiff alleges that he asked for help because he was suicidal. If true, that means that the defendants had the opportunity to intervene. A reasonable factfinder could conclude that the plaintiff was at risk of objectively serious harm when he told Bille, Kibbel and Martin that he was suicidal and asked for help. See Lisle, 933 F.3d at 716; see also Sanville v. McCaughtry, 266 F.3d 724, 733 (7th Cir. 2001) (suicide or attempted suicide is objectively serious and poses a substantial risk to health); Reed v. McBride, 178 F.3d 849, 852 (7th Cir. 1999).

    b.  Subjective Prong: Deliberate Indifference

The plaintiff claims that the defendants violated his constitutional rights because he was in "severe psychological disorder [sic] which resulted in a[n]

10

overwhelming feel[ing] of wanting to commit suicide which was obvious," he told two staff members (Kibbel and Bille) and they did not do anything and, when he called the control center, he had to wait twenty minutes before staff came to see him. Dkt. No. 29 at 2. The plaintiff says that when the staff arrived at his cell, he was cutting himself, he was seen by PSU staff and the nurse, and he was placed in observation. The defendants contend that Martin, Bille and Hintz did not recklessly fail to protect the plaintiff, that Kibbel was not subjectively aware of a substantial risk to the plaintiff's future health or safety and that Benson lacked sufficient personal involvement to be liable. Dkt. No. 33 at 20-23.

The defendants submitted a notice of supplemental authority regarding a recent opinion issued by the Court of Appeals for the Seventh Circuit. Dkt. Nos. 57, 58. In Lord v. Beahm, 952 F.3d 902 (7th Cir. 2020), an inmate exposed himself to a female guard and, after the guard walked away, the inmate began yelling that he had a razor blade and intended to kill himself. Id. at 903. The inmate sued four correctional officers, alleging that they acted with deliberate indifference to a material risk to his life by not responding faster to his suicide threat. Id. at 904. Three of the officers denied having heard the inmate threaten suicide. Id. The fourth officer acknowledged that he heard the inmate say he would kill himself if he was not able to talk to the officer to whom the inmate had exposed himself and that he told the inmate that the officer would not be returning to his cell. Id. About thirty minutes later, one of the four officers saw what appeared to be two blood droplets on the inmate's cell door window and

11

asked him what he was doing. Id. The inmate displayed a razor and said he was trying to kill himself. Id. After the officer secured the blade and moved the inmate to another cell, medical personnel arrived and applied a gauze bandage to the few minor scratches they saw on the inmate's forearm. Id. Although no further medical treatment was necessary, the inmate remained on observation. Id.

The inmate contended that the officers acted with deliberate indifference to a serious medical need by not responding fast enough to stop him from attempting suicide. Id. The Seventh Circuit characterized the inmate's statement as an insincere suicide threat to get attention. Id. at 904-05. The court determined that the inmate's claim failed "on the basic proposition that he has sued for damages under § 1983 and alleged a constitutional tort (an Eighth Amendment violation) without then developing evidence of a recoverable injury." Id. at 905 (citing Wilson v. Garcia, 471 U.S. 261, 278 (1985)).

> Unlike the district court, we do not wade into Lord's credibility because, even viewing the evidence as he urges, he did not show that he experienced any cognizable harm. Lord's physical injuries consisted only of minor scratches, quickly and easily treated with a gauze bandage. By any measure, the injuries were trivial—indeed, almost nonexistent—and Lord supplied no evidence that he suffered any other form of injury (for example, psychological harm) from his insincere suicide threat. Lord's summary judgment papers show that he wanted to recover money damages solely for the risk to his life—a serious medical need—the defendant officers ignored by not immediately responding to his suicide threat. That risk is not compensable without evidence of injury, however. Put most simply, the summary judgment record revealed and left nothing for Lord to present to a jury at trial.

Lord, 952 F.3d at 905.

Unlike Lord, the plaintiff's case is not a "clear instance of an insincere suicide threat from an inmate wanting nothing more than attention." Id. The plaintiff asserts that he was in severe psychological distress. He states that he told Kibbel he was going to harm himself and needed to see PSU staff as soon as possible. The plaintiff states that about an hour later, he told Bille that he was having a mental breakdown, was going to cut his wrist and needed to see PSU. Later, when Kibbel and Bille delivered the plaintiff's lunch tray, he allegedly asked them why they did not get anyone to help him because he was suicidal, but he alleges that they just kept walking. Kibbel and Bille dispute these facts and do not recall the plaintiff asking to see PSU and being suicidal. If the plaintiff's allegations are true, a factfinder could conclude that Kibbel and Bille acted with deliberate indifference by ignoring the plaintiff's requests for help. See Collins v. Seeman, 462 F.3d 757, 761 (7th Cir. 2006) (assuming that an officer had a subjective awareness of an "imminent" threat to an inmate's safety when the inmate told the officer he wanted to see the prison counselor because he was feeling suicidal).

In addition to allegedly asking for help from Kibbel and Bille, the plaintiff says he used an intercom to call for help. Between 10:51 a.m. and 11:10 a.m., he called twice himself and an inmate near him called a third time. Martin answered the calls, and after each call, Martin notified Hintz of the statements that the plaintiff was suicidal. In the third call,

13

the plaintiff said he was cutting himself and, about ten minutes after that call, Hintz and Bille went to the plaintiff's cell. The defendants do not provide any explanation for Hintz's delay in responding to the three calls. Perhaps he was busy or perhaps it just took him awhile to arrive at the plaintiff's cell. Depending on Hintz's testimony regarding why it took so long, a reasonable factfinder could conclude that Hintz acted with deliberate indifference by not responding sooner to the calls from Martin that the plaintiff was suicidal. See id.

Martin was the only officer in the control center. Martin took appropriate actions when he received the calls and he could not have done anything else, like leave the control center to check on the plaintiff himself. No reasonable factfinder could conclude that he acted with deliberate indifference. See id. at 762 (no deliberate indifference where officer immediately informed control room that inmate had requested the assistance of a crisis counselor and was "feeling suicidal"). Likewise, Benson was not present on the unit during the relevant period and could not have acted with deliberate indifference. The court will grant the defendants' motion for summary judgment as to defendants Martin and Benson.

### 3. *Qualified Immunity*

The defendants contend that they are entitled to qualified immunity. Dkt. No. 33 at 24-26. They say the court must determine whether clearly established federal law prohibited the defendants from notifying their superior

14

officer, Hintz, and relying on Hintz's judgment about the appropriate course of action, and whether clearly established law required Hintz to immediately go to the plaintiff's cell or immediately get psychological services to the plaintiff's cell before he gave himself a tiny superficial scratch that drew no blood and required no treatment. Id. at 25-26. The defendants contend that given that the district courts in Lindsey and Davis found that ingesting unidentified pills does not by itself give notice of a substantial risk of serious harm, the defendants did not act recklessly given the information they had available. Id. at 26.

Qualified immunity "protects government officials from suit for damages when their conduct does not violate clearly established statutory or constitutional rights." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Determining whether a state official is entitled to qualified immunity involves two inquiries: "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." Williams v. City of Chi., 733 F.3d 749, 758 (7th Cir. 2013).

The defendants cite the Lindsey and Davis district court cases in support of their qualified immunity argument. As the court has explained, these cases are either distinguishable from the instant case or not persuasive authority. Viewing the facts in the light most favorable to the plaintiff, a reasonable factfinder could find that Bille, Kibbel and Hintz were deliberately indifferent to the risk that the plaintiff might be suicidal. It was well established law in April 2016 that the risk of suicide was an objectively serious medical condition

15

under the Eighth Amendment. See Lisle, 933 F.3d at 716 (citing Estate of Clark v. Walker, 865 F.3d 544, 561 (7th Cir. 2017) (inmate's "right to be free from deliberate indifference to his risk of suicide while he was in custody was clearly established at the time of his death in 2012"); Woodward v. Correctional Medical Servs. of Ill., Inc., 368 F.3d 917, 926-27, 929 (7th Cir. 2004) (jail managers would be guilty of deliberate indifference if they took no precautions against the possibility of an inmate's suicide); Cavalieri v. Shepard, 321 F.3d 616, 623 (7th Cir. 2003) ("no doubt" the right of an inmate to be free from deliberate indifference to his risk of suicide was clearly established in 1998); Hall v. Ryan, 957 F.2d 402, 404-05 (7th Cir. 1992) ("It was clearly established in 1986 that police officers could not be deliberately indifferent to a detainee who is in need of medical attention because of a mental illness or who is a substantial suicide risk.")). The defendants are not entitled to qualified immunity.

### III. Plaintiff's Motion For Sanctions

On April 6, 2020, the plaintiff filed a motion for sanctions in which he asserts that the defendants committed perjury in some of their discovery responses. Dkt. No. 60. For example, he cites attached Exhibit A in which he states that he asked about his self-harm incident via a discovery request. Id. at 1. The plaintiff says that one or more of the defendants lied under oath when they responded "no (as in it never happened)." Id. Review of the discovery responses attached to the plaintiff's motion shows that the defendants' responses conform to their summary judgment filings. For example, Exhibit A

16

is Defendants' Response to Plaintiff's Second Request for Admissions; the defendants "deny" the plaintiff's first request, which was: "On April 18, 2016 was the plaintiff pulled out of his room for self-harm with blood coming from a cut wound on his left wrist." Dkt. No. 60-1 at 21. The response is consistent with the defendants' assertion that the plaintiff was not bleeding when Hintz and Bille arrived at his cell. The defendants are not denying that the plaintiff cut himself; they disagree with the plaintiff's characterization of his injury.

As the court has discussed, the parties disagree about what happened on April 18, 2016. The fact that the defendants disagree with the plaintiff, or that they do not remember the incident the way the plaintiff does, does not mean that they are lying under oath. It is not the court's job, or even the plaintiff's, to decide whose version of events is the most credible. That is the jury's job. The plaintiff is not entitled to sanctions and the court will deny his motion.

## IV. Conclusion

The court **DENIES** the plaintiff's renewed motion for summary judgment. Dkt. No. 55.

The court **GRANTS IN PART** the defendants' renewed motion for summary judgment. Dkt. No. 56.

The court **DISMISSES** defendants Kevin Benson and Adam Martin.

The court **DENIES** the plaintiff's motion for sanctions. Dkt. No. 60.

Before filing his motion for summary judgment, the plaintiff asked the court to appoint a lawyer for him. Dkt. No. 20. The court denied that motion but indicated that it would consider appointing counsel later in the case.

Because the plaintiff has a claim that has survived summary judgment, the court will begin looking for a volunteer lawyer to represent the plaintiff. Once the court finds a lawyer willing to represent the plaintiff, it will notify the plaintiff; assuming the plaintiff accepts counsel's representation and agrees to the expense reimbursement procedure, the court then will schedule a status conference to discuss next steps. In the meantime, the court reminds the parties that if they are interested in mediation with a magistrate judge, they need only notify the court. If all parties are interested in mediation, the court will refer the case to a magistrate judge for that purpose. Magistrate judges in the Eastern District of Wisconsin are conducting mediation sessions by videoconference.

Dated in Milwaukee, Wisconsin this 24th day of August, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**