UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSHUA P. BRAITHWAITE,

        Plaintiff,

  v.

        Case No. 17-cv-706-pp

MITCHELL BILLE,
GERRARD KIBBEL
and RYAN HINTZ,

        Defendants.

**ORDER DENYING PLAINTIFF'S MOTION FOR CLARIFICATION/RECONSIDERATION (DKT. NO. 148) AND GRANTING IN PART AND DENYING IN PART MOTION FOR TRANSCRIPTS (DKT. NO. 152)**

At the end of November 2021, a jury heard the plaintiff's claims that the defendants violated his Eighth Amendment rights when they failed to prevent him from harming himself. Dkt. No. 68; Dkt. No. 123 at 1. The jurors were unable to reach a unanimous verdict and on December 2, 2021, the court declared a mistrial. Dkt. No. 123 at 13. The defendants then brought a renewed motion for a directed verdict. Id. On April 27, 2022, the court granted that motion, concluding that during the four-day trial, the plaintiff had not presented evidence of a recoverable injury. Dkt. No. 130. The plaintiff had argued that a photo presented at trial showed injury and that the defendants' delayed response showed deliberate indifference. Id. at 3-4. The defendants had argued that both the medical records and the photo itself showed only superficial harm, and argued that the reason the case had made it past the

1

summary judgment stage was because the court had not had a photo of the injury at that point. Id. at 4. The court agreed with the defendants.

The plaintiff then filed a motion for relief from judgment. Dkt. No. 132. He complained about decisions his lawyers had made at trial and argued that they were ineffective. Id. at 4. The court recounted that ineffective assistance of counsel is not a basis for altering or setting aside a judgment under Federal Rule of Civil Procedure 59. Id. The court denied the motion on October 24, 2022. Id. at 5.

On November 1, 2022, the court received from the plaintiff a document titled "Motion for Clarification/Reconsideration." Dkt. No. 148. The motion asserts that the court's October 24, 2022 order does not respond to "the discovery phrase where there is clear evidence that no such video or photograph exist see Exhibit 5 and 4 front and back." Id. at 1-2. The motion asks the court to view Exhibit 3 front and back; it says that "Andrew Larson stated in supervisor comments that no self harm action meaning that pic[t]ure photograph at trial was not taking by him meaning he lied under oath at trial and the jury consider that testimony and photograph in deliberation room weighed in their verdict for a mistrial/hang jury." Id. The motion also asserts the "actual nurse" who was present during the injuries referenced was Amy Gunderson not Donna Larson. Id. at 2. The plaintiff contends that the defendants "did that so the jury would not find out the actual nurse who was present and who performed examination of plaintiff injuries on 4/18-2016 Amy Gunderson was charged with smuggling illegal contraband to a inmat[e] at

2

Waupun Correction Institution where plaintiff lawsuit and injury took place see exhibit 2 front and back." Id. at 3.

The plaintiff asks the court to reconsider its October 24, 2022 order. The Federal Rules of Civil Procedure do not include a rule authorizing motions to reconsider. As the court explained in the October 24, 2022 order, Rule 59 allows a party to ask the court to alter or amend a judgment if the person files the motion within twenty-eight days of the date the court enters judgment. The court entered judgment on April 27, 2022, and it received the current motion from the plaintiff on November 1, 2022—over six months later. The court cannot consider the plaintiff's motion to be a motion to alter or amend the judgment under Rule 59(e) because it was not timely filed.

Rule 60(b) allows a court to relieve a party from a final judgment, order or proceeding for any of six reasons:

> (1)   mistake, inadvertence, surprise, or excusable neglect;
> (2)   newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3)   fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4)   the judgment is void;
> (5)   the judgment has been satisfied, released, or discharge; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6)   any other reason that justifies relief.

The plaintiff has not identified any mistake, inadvertence, surprise or excusable neglect, nor has he identified any newly-discovered evidence. He claims that witness Andrew Larson lied at trial about having taken the photograph of the plaintiff's arm. There was extensive pretrial discussion about

3

the photo—it was produced around the time of trial, five and a half years after it was taken, from a "contraband" folder maintained by the prison; defense counsel explained at trial that the defense had not been aware of the folder until shortly before trial. Dkt. No. 123 at 2. Outside of the hearing of the jury, Captain Kyle Tritt testified that the photo came from an electronic file but that he did not know who had taken it. Id. at 3. Andrew Larson testified on the third day of trial; the photograph came in through him without objection. Id. at 10. The plaintiff now appears to argue that Larson's comment that that no self harm action was taken means that Larson did not take the photo and lied at trial when he said he did. This is not new evidence or a reason for the court to reconsider its October 24, 2022 order. The plaintiff's counsel could have cross-examined Larson about the comment had they chosen to do so. Even if they had, Larson may well have testified that he did not believe that the photo reflected "self harm." And even if Larson did not take the photo—which the court has no reason to believe—the plaintiff previously has relied on the photo to argue that there *was* evidence of self-harm. Regardless of who took the photo, this court has concluded that it does not constitute evidence of a recoverable injury.

The plaintiff also says that the jury considered Larson's testimony about the photo while in the jury deliberation room, and weighed it in reaching their "verdict" for a mistrial/hung jury. This is sheer speculation. Neither the plaintiff nor the court has any idea what the jurors considered in the deliberation room or why they could not reach a verdict. The court received

4

three communications from the jurors about their impasse. The first read, "Your Honor, what happens if the jurors are unable to determine a unanimous decision?" Dkt. No. 120 at 1. The court advised the jurors to review the jury instruction at page 26, and gave them the option of continuing to deliberate that evening or returning the next day; they chose to return the next day. Id. at 2. The second message, written by a different juror, stated:

> I as the lead juror have noticed an unwillingness to cooperate among the jurors, I have attempted to keep a calm and logical discussion, but feel I have personally failed for reasons related to the documents given to us which everyone has been read. Early on the court will recall the first letter sent out by us was the question of Page 26 which I signed after we all heard it. The handwriting was not my own but we agreed and I signed it.

Id. at 4. The court conferred with the parties, and everyone agreed to the following response: "Are there questions about the evidence or the law that the court could answer that would help the jury reach a decision?" Id. at 5. The jury responded, "Your honor, Kindly we all say no to your question. We collectively cannot come to a unanimous decision." Id.

There is nothing in any of these notes that reveals why the jurors could not agree on a verdict. Perhaps some believed that the plaintiff truly was suicidal and others did not. Perhaps some believed that the plaintiff's injuries were more serious than others. Perhaps some believed that the defendants delayed in getting to the plaintiff and others did not. Perhaps some believed certain witnesses that others did not believe. Perhaps some simply did not feel comfortable making a decision or standing in judgment of others. The court does not know, and it has no way of knowing whether Andrew Larson's

testimony that he was the person who took the photo had anything to do with their inability to agree.

The plaintiff's other argument is that Donna Larson, the nurse who testified at the trial, was not the nurse who was present at the time the plaintiff used the pen insert on his arm; he argues that the nurse who *was* present was guilty of some inappropriate behavior and that is why the defendants did not call her as a witness. Again, this is an issue that could have been addressed at trial. The plaintiff had the ability to call witnesses—he presented as witnesses Captain Kyle Tritt, Adam Martin, Demetrius Cooper, Antoine Payne, Johnnie Wesley, Gerrard Kibbel, Mitchell Bille and Ryan Hintz; the plaintiff himself also testified. Dkt. No. 123. He could have called Amy Gunderson as a witness, had he chosen to do. But he did not list Gunderson on his witness list prior to trial, dkt. no. 77 at 3, and did not call her at trial.

Nor has the plaintiff presented proof of what Gunderson would have said at trial that might have swayed the jury. At the summary judgment stage, the defendants presented medical records; Gunderson noted on April 18, 2016 that at 10:20 am she had seen the plaintiff in the strip cell and observed the following:

> Superficial abrasion to L posterior [unintelligible] inferior to AC measuring approx. 1 cm x 0.2 cm. He would not state what he cut himself [with]. No active bleeding. No s/sx of infection noted. Cleansed + covered [with] bandage. No f/u needed. May remove bandage in 2 days and leave open to air.

Dkt. No. 38-1 at 2. This one statement supports the court's conclusion in its order granting judgment to the defendants that Gunderson's note, along with

6

the photo, demonstrated that the plaintiff did not suffer a cognizable injury. Dkt. No. 130 at 5-6. The plaintiff has not demonstrated that if he had called Gunderson as a witness, she would have provided testimony that would have swayed the jury.

Neither of these arguments—which the plaintiff did not make in his May 3, 2022 motion for relief from judgment—constitute reasons for the court to reconsider its October 24, 2022 order denying the motion for relief from judgment. The court understands that the plaintiff disagrees with the court's decision to issue judgment in favor of the defendants. He is absolutely entitled to disagree, but his remedy is to appeal to the Seventh Circuit Court of Appeals.

That takes the court to the plaintiff's second motion, asking the court to order that he be provided with transcripts free of charge. Dkt. No. 152. In support of this motion, he cites 28 U.S.C. §753(f), which states:

> Each reporter may charge and collect fees for transcripts requested by the parties, including the United States, at rates prescribed by the court subject to the approval of the Judicial Conference. [The reporter] shall not charge a fee for any copy of a transcript delivered to the clerk for the records of court. Fees for transcripts furnished in criminal proceedings to persons proceeding under the Criminal Justice Act (18 U.S.C. 3006A), or in habeas corpus proceedings to persons allowed to sue, defend, or appeal in forma pauperis, shall be paid by the United States out of moneys appropriated for those purposes. Fees for transcripts furnished in proceedings brought under section 2255 of this title to persons permitted to sue or appeal in forma pauperis shall be paid by the United States out of money appropriated for that purpose if the trial judge or a circuit judge certifies that the suit or appeal is not frivolous and that the transcript is needed to decide the issue presented by the suit or appeal. Fees for transcripts furnished in other proceedings to persons permitted to appeal in forma pauperis shall also be paid by the United States if the trial judge or a circuit judge certifies that the

appeal is not frivolous (but presents a substantial question). The reporter may require any party requesting a transcript to prepay the estimated fee in advance except as to transcripts that are to be paid for by the United States.

The plaintiff's is not a criminal proceeding under the CJA, or a *habeas* or 28 U.S.C. §2255 proceeding. That means that the transcript fees in this case will be paid by the United States only if the plaintiff has been allowed to proceed *in forma pauperis* and this court or a Seventh Circuit judge certifies that the appeal is not frivolous and presents a substantial question.

This court has allowed the plaintiff to proceed *in forma pauperis*. Dkt. No. 10. The question is whether the plaintiff's appeal would be frivolous and whether it would present a substantial question. The court does not know exactly what issues the plaintiff would appeal, but he would have to appeal from the court's order granting the defendants' renewed motion for judgment as a matter of law (Dkt. No. 130, with judgment entered April 27, 2022); its order denying his motion for relief from judgment (Dkt. No. 147, docketed October 24, 2022) or this order. The plaintiff asks the court to order that the United States foot the bill for transcripts of the following proceedings:

| | |
|---|---|
| December 8, 2020 | Status conference |
| February 1, 2021 | Status conference |
| May 11, 2021 | Scheduling conference |
| October 4, 2021 | Status conference |
| November 29-December 2, 2021 | Jury trial |

Dkt. No. 152.

The court cannot determine why several of these transcripts would be necessary for appeal. The December 8, 2020 status conference was the first hearing held after counsel made an appearance on behalf of the plaintiff; the

8

court and the parties discussed whether mediation was an option and issues related to trial scheduling given the status of the COVID-19 pandemic at that time. Dkt. No. 74. The court scheduled the February 1, 2021 status conference so that the court and the parties could figure out social distancing logistics ahead of the jury trial scheduled for February 8, 2021, but because defense counsel had tested positive for COVID-19, the court was required to reschedule the trial to April 2021; the logistics discussion did not take place. Dkt. No. 88. At the May 11, 2021 scheduling conference, the court explained to the parties why it had removed the April 5, 2021 trial from the calendar and talked with them about new trial dates (eventually re-scheduling the trial for November 29, 2021). Dkt. No. 96. The court scheduled the October 4, 2021 status conference to address housekeeping issues ahead of the November 29 trial, given that it had been some time since the parties had had a pretrial conference or discussed trial logistics. Dkt. No. 106. The parties discussed how to use videoconference technology to allow witnesses to appear via Zoom, talked about in-courtroom logistics (such as making sure the plaintiff did not appear before the jury in visible restraints) and the planned November 4, 2021 technology walk-through of the courtroom. Id.

None of these hearings involved the substance of the plaintiff's claim that the defendants violated his Eighth Amendment rights by failing to protect him from self-harm. Transcripts of these proceedings are not necessary to enable the plaintiff to appeal.

As for the trial transcript, although the jury was unable to reach a verdict, the court can comprehend how the plaintiff might wish to point out certain trial evidence in support of arguments that the court should not have granted the defendants' renewed motion for judgment as a matter of law, or in support of arguments that the court erred in failing to grant his motion for relief from judgment or this motion to reconsider. The court has doubts that any appeal presents a substantial question, particularly given the Seventh Circuit's decision in Lord v. Beahm, 952 F.3d 902 (7th Cir. 2020). But the court also understands that if the Seventh Circuit were to conclude that the trial transcript was necessary to resolve the plaintiff's appeal and he did not have that transcript, he would lose his opportunity to make his claims to the appellate court. The court will grant the plaintiff's motion to require the United States to pay for the transcript of the November 29 to December 2, 2021 jury trial, but will deny his motion as to the other transcripts.

The court **DENIES** the plaintiff's motion for clarification and reconsideration. Dkt. No. 148.

The court **DENIES** the plaintiff's motion for transcripts to the extent that he asks the court to order that the United States to pay for transcripts of the proceedings on December 8, 2020; February 1, 2021; May 11, 2021; and October 4, 2021. Dkt. No. 152.

The court **GRANTS** the plaintiff's motion under 28 U.S.C. §753(f) to the extent that he asks the court to order that the United States pay for the transcript of the November 29–December 2, 2021 jury trial. Dkt. No. 152.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the date of this order. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Dated in Milwaukee, Wisconsin this 9th day of January, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**